CASE 65.—PROCEEDINGS BY W. M. O'NEAL AGAINST JOE S.
MINARY, AND AGAINST THE COUNTY JUDGE
AND CLERK OF WOODFORD COUNTY IN REFER-
·ENCE TO THE HOLDING OF A LOCAL OPTION
ELECTION IN SAID COUNTY.—May 3.

## O'Neal v. Minary; Same v. Wilhoit, Judge; &c.; Same v. Gray, Clerk

Appeal from Woodford Circuit Court.

R. L. STOUT, OF THE 14TH DISTRICT, Circuit Judge.

From orders in each case against petitioners in the
county court they appeal to the circuit court which
dismissed their petition from which they again appeal.
Affirmed.

1.  Intoxicating Liquors—Local Option Elections—Petition—With-
    drawal—Where the same attorneys filed two petitions for the
    submission of local option questions throughout the county
    and in a city contained therein on the same day, but peti-
    tioners declined to make the necessary deposit for the election
    in the city, and before their petition was acted on asked
    leave to withdraw the petition for the city election, they
    were entitled to do so as against certain dissenting petitioners,
    who were not sufficient in number to have presented the
    petition on their own behalf.
2.  Same—Petitioners—Withdrawal of Name—A petitioner for a
    local option election may withdraw his name from the petition
    at any time before the petition· has been acted upon.
3.  Same—Cost of Election—In proceedings for a local option
    election, no one is responsible for the cost of the proceeding
    nor ensuing litigation, and no one is required to make a
    deposit to cover the costs of the election but the petitioners.
4   Same—Petition for City Election—Where separate petitions
    for local option elections in a county and a city contained
    therein were filed at the same time, and thereafter the city
    petition was withdrawn, the persons desiring a city election

at the same time could have procured the same by getting up a petition therefor, having it signed by the requisite number of voters, and filing it with the county judge after the filing of the county petition.

5. Same—Votes—Form—Const., section 61, and Ky. Stats., 1903, section 2554, relating to local option elections, use the words "spirituous, vinous or malt liquors." Section 2560, as amended by Act March 14, 1906 (Laws 1906, p. 86, c. 21), uses the words "spirituous, vinous, malt or other intoxicating liquors." An order directed the holding of a local option election on the proposition whether spirituous, vinous, malt, or other intoxicating liquors should be sold within the county, the law to apply to druggists; but the votes as cast were on the proposition whether the voter favored prohibiting the sale, barter, and loan of spirituous, vinous, or malt liquors in Woodford county, the prohibition to apply to druggists, etc. Held, that the variance between the vote and the order was immaterial.

6. Same—Canvass—Separation—Where a local option election was only ordered to be held in a county which contained a city of the fourth class, without any requirement for a special election in such city, the canvassing officers properly canvassed and certified the vote of the county as a whole, and were not required to make a separate canvass and return as to the city.

7. Same—Unit for Purpose of Election—Ky. Stats., 1903, section 2560, as amended by Act March, 14, 1906 (Laws 1906, p. 86, c. 21), authorizing the holding of separate local option elections in counties and in cities contained therein of the fourth class and greater, makes the county, and not the city, the unit for local option purposes.

8. Same—Time of Election—Where local option elections are held as provided by Ky. Stats., 1903, section 2560, as amended by Act March 14, 1906 (Laws 1906, p. 86, c. 21), in a county as well as in cities of the fourth class or greater within such county, the result of the election in the county will control the city, unless both elecitons are held on the same day.

9. Mandamus—Judicial Action—Local Option Elections—Refusal of a county judge to order a local option election ,when the statutory requirements have been complied with, may be controlled by mandamus; his order not being appealable, under Ky. Stats., 1903, section 978, allowing appeals from orders of the county court in certain specified cases, not including that in question and "in all other cases allowed by law."

O'Neal v. Minary—Same v. Wilhoit, Judge, &c.

10. Intoxicating Liquors — Local Option Elections — Time — A county judge, to whom a petition for local option elections is submitted, has power to fix a different date for the election than that specified in the application, not earlier than 60 days from the date of such application.

11. Mandamus—Judicial Action—Local Option Elections—Where a petition is filed for a local option election in an entire county, and also a petition for a similar election in a city of the fourth class or larger within the county, the judge may be required by mandatory injunction to fix the same day for the city election that is fixed for the election in the county, though he cannot be required by mandamus to name a certain day for the county election.

12. Same—Direction of Election—Appeal—No appeal lies from an order of the county judge directing the holding of a local option election.

WALLACE & HARRIS and D. T. EDWARDS, for appellants.

## POINTS CITED.

1. It being the unquestioned duty of the county judge to effectuate and not retard or nullify the provisions of the constitution and the statutes, it was just as clearly his duty, in acting upon the two petitions at the same time making it incumbent upon him to order two separate elections, to so fix the date of those elections, that each might be legally held, and that the option of the people in each, expressed by their votes, might be legally executed. It cannot be questioned in the light of adjudication of this court, that an order directing the separate city election to be held at any time after the county election, within three years of its date, would have rendered such city election nugatory and invalid.

2. The fact that that duty was ministerial is certainly just as clear, and just as well established by law, as that it was a duty.

## AUTHORITIES CITED.

Civil Code, section 724, section 25, subsection 1 of section 371, section 477; Kentucky Statutes, sections 2554, 2560, 1445; Grinnell v. Adams, 34 Ohio St., 44; 14 Cyclopedia of Law and Procedure, 394, 398, 406, 397, 399, 423; Jennings v. Pearce, 99 Ala., 303; 13 So., 605; White v. Nance, 16 Ala., 345; Cunningham v. Carpenter, 10 Ala., 109; Hanchet v. Ives, 133 Ill., 332; 24 N. E.,

O'Neal v. Minary—Same v. Wilhoit, Judge, &c. .

396; Lyon v. Worcester, 49 Ill., 638; Major v. Collins, 11 Ill. App., 658; Steeple v. Downing, 60 Ind., 478; Penobscot R. Co. v. Mayo, 60 Me., 306; McCullum v. Coxe, 1 Wall 139; 1 L. Ed., 72; Bentley v. Reading, 22 Wkly. Note Cas., 60; Morris v. Peay, 1 Hill (S. C.) 35; Lewis v. Laidley, 39 W. Va., 422, 19 S. E., 378; Selleck v. Phelps, 11 Wis., 380; 17 Cent. Digest, Dismall & Nonsuit, sec. 39; Farmers Bank v. Gaither, 8 Fed. case No. 4C54; 3 Crauch C. C., 345; Perry v. Tynen, 22 Barb. (N. Y.) 137; In re Butler, 101 N. Y., 307, 4 N. E., 518; Cunningham v. Carpenter, 10 Ala., 109; Aylesworth v. Brown, 31 Ind., 270; Noonan v. Orton, 31 Wis., 265; Langdale v. Langdale, 13 Ves. Jr., 167; 33 Eng. Reprint, 258; Kehoe v. Philippi, 42 Mo. App., 292; Wall v. Galvin, 80 Ind., 447; Cooper v. Cooper, 1 Phila. (Pa.) 129; Winslow v. Newlin, 45 Ill., 145; Holkirk v. Holkirk, 4 Madd., 50; Jeffcoat v. Jeffcoat, 3 L. J. Cho. O. S., 45; Loring v. Brackett, 3 Pick. (Mass.) 403; Carleton v. Darey, 75 N. Y., 375; Murray v. Silver, 1 C. B., 638; 14 L. J. C. P., 168; Cunningham v. White, 45 Pow. Pr (N. Y.) 486; Steinkamp v. Goebel, 95 N. W., 648; Edwards v. Perryman, 18 Ga., 374; Sheehan v. Osborne, 69 Pac., (Cal.) 842; McCullouch v. Blackwell, 10 S. W., 261; Austin v. Atlantic City, 48 N. J. Law, 118; 3 Atl. Rep., 65; Dufford v. Nolan, 46 N. J. Law. 87; Ferry v. Williams, 41 N. J. Law, 332; Williams v. Citizens, 40 Ark., 290; Miller v. Jones, 80 Ala., 89; McCreary v. O'Flynn, 63 Miss., 204; Boyd v. Bryant, 35 Ark.; Hays v. Jones, 27 Ohio St., 218; Dutton v. Village of Hanover, 42 Ohio St., 215; Thomas v. Thomas, 3 Litt., 8; Sawyer v. Langford, 5 Bush, 542; Baker v Kinnaird, 94 Ky., 13; Hackworth v. Harlan's heirs, 14 Ky. Law Rep., 77; Commonwealth for use v. Pope, 21 Ky. Law Rep., 1842, 19 Ky. Law Rep. 1255; Roberts v. Phillips, 11 Bush, 12; Hearn, Lee, &c. v. Lander, 11 Bush, 671; Puckett v. Snider, 22 Ky. Law Rep., 1720; Commonwealth v. Bottom, 22 Ky. Law Rep., 410; Tousey v. DeHuy, 23 Ibid., 458; Tousey v. Stites, 23 Ibid., 1738; Texas Act of June 24, 1876; Ex parte Sublette, 4 S. W. Rep., (Texas) 895; Blair v. McCann, 23 Ky. Law Rep., 1226; Wyatt, Judge, v. Ryan, 24 Ky. Law Rep., 228; Kentucky Act of May 4, 1888; Doores v. Varnon, 15 Ky. Law Rep., 244; Early v. Rains, 28 Ky. Law Rep., 415; Smith v. Patton, 103 Ky., 444; Nall v. Tinsley, 107 Ky., 441; American & English Encyclopedia of Law, vol. 15, p. 715; American Law Dictionary, 687· Bouvier's Law Dictionary, vol. 2, p. 196; Gates v. Barrett, 79 Ky., 296; High on Injunctions, sec. 796 and 801; Weams v. Toney, 107 Ky., 419; Hager v. New South Brewing Co., 28 Ky. Law Rep., 895; Gayle v. Owen County Court, 83 Ky., 63; Bill of Rights, section 6, Constitution, section 61, 145.

O'Neal v. Minary—Same v. Wilhoit, Judge, &c.

D. L. THORNTON and FIELD McLEOD, for appellees.

W. O. DAVIS and L. A. NUCKOLS, of counsel.

POINTS AND AUTHORITIES CITED.

1. The county judge properly refused to order a city election. (Blair v. McCann, 23 Ky. Law Rep., 1226; Goheen v. Myers, 18 B. Monroe, 423; Commonwealth v. Boone County, 82 Ky., 638; Wyatt, Judge, v. Ryan, &c., 24 Ky. Law Rep., 228; Kentucky Statutes, sec. 2559; "Cyc.," vol. 14, p. 399.)

2. The question presented is an academic one, which will not now be determined. (King v. Tilford, 24 Ky. Law Rep., 1270; Conn v. Desha, Ibid., 1400.)

3. No appeal lies from the order of the county judge dismissing the petition for the city election. (Kentucky Statutes, sec. 978.)

4. After a local option election, the result cannot be contested by mandamus or injunction. The statutory remedy must be pursued. (Ky. Statutes, sec. 2566; Russell v. Muldraugh's Hill, C. & C. T. P. R. Co., 13 Bush, 307; Ky. River Nav. Co. v. Commonwealth, Ibid., 436; Wilson v. Hines, 18 Ky. Law Rep. 233; Puckett v. Snider, 22 Ky. Law Rep , 1718.)

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The regular terms of the Woodford county court are held on the fourth Monday in each month. July 23, 1906, was the fourth Monday. On Saturday, July 21st, a petition signed by 152 citizens of Versailles was filed with the county judge, asking that an election be ordered held in the city of Versailles on the 19th of September, 1906, for the purpose of taking the sense of the legal voters of the city upon the proposition whether or not spirituous, vinous, malt, or other intoxicating liquors should be sold therein, the law to apply to druggists; and the court, being satisfied from the petition and evidence heard that the petition was signed by the number of legal voters in each precinct of the city, as required by the statute,

ordered the petition filed. Thereafter, on the same day and by the same attorneys, W. O. Davis and Lewis A. Nuckols, a petition was filed signed by the requisite number of voters in each precinct in Woodford county, asking an election be held in the county on September 20, 1906, for the purpose of submitting the same question to the vote of the county. The court in like manner ordered this petition filed. On the following Monday morning, when the county court was in session, the petitioners in the first petition, asking the vote to be taken in Versailles on September 19th, appeared by the attorneys who had filed the petition, and asked the court to withdraw it, declining to make any deposit, as required by the statute. The court sustained the motion, and, the deposit having been made upon the petition asking the vote in the entire county, ordered an election to be held in the county as therein prayed. Both the petitions above referred to had been gotten up by the people who were opposed to the sale of intoxicants in the county, and it was evidently contemplated by them that, if the election was held on the 19th, the subsequent election by the whole county on the 20th would control the result in the whole county under the county unit law; the city not having voted on the same day as the county. But some of the persons who wanted whisky sold in the city had an attorney present in the county court apparently to ask that the city election should be held, not on the 19th, as asked in the petition, but on the 20th, the same day as the county election. This attorney objected to the motion to dismiss the petition for the city election; but, as he did not then represent any of the petitioners, the objection was overruled. Later, on the same day, and before any of the orders

had been entered on the order book, this attorney, representing the same parties whom he had represented in the morning and a minority of the petitioners, but not 25 per cent. of the legal voters of the precincts cast at the last election, appeared in court and tendered the necessary sum of money, and moved the court upon the petition that had theretofore been withdrawn to order an election in Versailles on September 20th. The court overruled this motion on the ground that he did not represent enough of the petitioners to authorize the action to be taken. Afterwards, and on a subsequent day, the same attorney appeared before the county court with a paper signed by 34 of the petitioners, stating that they had not authorized the petition to be withdrawn, and asking that the order be set aside. The court overruled this motion. From these orders of the county court an appeal was taken to the circuit court, and, that court having dismissed the appeal, the parties complaining have appealed to this court. In the meantime the same parties, or they with others, filed a petition in the circuit court, asking a mandamus against the county judge requiring him to order an election to be held in Versailles on September 20, 1906. The circuit court dismissed the petition, and from this judgment they also appeal. The election was held in the county, and resulted in a large majority against the sale. The vote was canvassed, and the certificate was given of the result. Thereupon those who were in favor of the sale brought an action on October 12, 1906, reciting the facts above stated against the county judge and the county clerk to enjoin them from spreading the certificate of the election upon the records of the county court. The circuit court dismissed this petition, and they appeal. They also brought another

suit on the same day against the clerk and the county
judge, setting out the same facts, and asking on the
same and other grounds the same relief.    Precincts
1 and 2 of Woodford county constitute the city of
Versailles.   These two precincts voted in favor of the
sale.   The plaintiffs asked that the vote of these pre-
cincts be certified and spread on the record separately
from the vote of the rest of the county.   The circuit
court sustained a demurrer to the petition and dis-
missed it, and from this judgment the plaintiffs
appeal.

The four appeals will be considered together, as
they involve largely the same questions.   The same
attorneys filed both the petitions on Saturday.
Although the petitions were filed, still nothing could
be done under the statute until the necessary deposit
was made to cover the expenses of the election, and,
until the court had acted upon a petition, the peti-
tioners might withdraw it. It was their petition. They
were not required to go on with the proceeding, if
they decided to abandon it, and any one of them had
the right to withdraw.   The attorneys who had filed
the petition had prima facie a right to speak for their
clients and withdraw the petition in their names.   The
county judge, therefore, when they failed to make the
deposit and withdrew their petition, did not abuse a
sound discretion in allowing them to do so, although
objection was made on behalf of other persons who
were not parties to the petition.

When, in the afternoon, an attorney representing a
few of the petitioners tendered the amount necessary,
and proposed to have the order entered for an elec-
tion in the city of Versailles, he could only speak for
his clients, and he did not have the requisite number
of petitioners; all the other petitioners having with-

drawn their petition.  The county judge could not order an election on a petition signed by less than the statutory number of voters, and, although a voter had signed the petition, still he might at any time before the petition was acted upon withdraw his name, and, if this left less than the statutory number, no election could be ordered.  The statute is not satisfied if a petition signed by a sufficient number of voters is filed with the judge.  There must be a sufficient number of petitioners asking the calling of the election.  No one is responsible for the cost of the proceeding but the petitioners.  No one is required to make a deposit but the petitioners. If litigation ensues, no one may be responsible for the cost but the petitioners.  It would therefore be a very harsh rule to say that a person who had signed such a petition cannot withdraw from it before it is accepted. Remonstrances against the granting of license are frequently withdrawn in county courts, although the writing has been filed with the county court, and there is no sound reason why the same rule should not apply to a petition for an election under the local option act before it is acted on by the county court. As all the signers to the petition had withdrawn, except the minority who offered to make the deposit, there was not a petition by the requisite number of voters when this offer was made, and the election could not then be called.  There was, therefore, no error on the part of the county judge in any of his rulings in this matter.  The people who wanted an election held in Versailles on the same day as the county election could have protected themselves by getting up a petition to this effect, having it signed by the requisite number of voters, and filing it with the county judge after the petiton for a vote in the

county was filed with him on July 21st. They had
no right to rely on a petition gotten up by others for
an election on another day. It is reasonably clear
from the record that the county petition and the peti-
tion for a vote in Versailles on the 19th of September
were gotten up by the persons who were opposed to
the sale of whisky, and this fact was evident from
the beginning. Versailles is a city of the fourth class.
It had a right to vote on the same day as the county
voted, and those who wished to secure to it this right
should, after the county petition was filed, have got-
ten up a petition asking the holding of an election
by the city of Versailles on the same day as the
county election. In this way they could have protected
themselves.

The order entered by the county court directed an
election to be held in the county upon the proposition
"whether or not spirituous, vinous, or malt or other
intoxicating liquors" should be sold in Woodford
county; the law to apply to druggists. The adver-
tisement of the election by the sheriff stated that the
election would be held to take the sense of the voters
of Woodford county on the proposition stated. The
votes, however, as cast, were on the proposition set
out on the ballots: "Do you favor prohibiting the
sale, barter, and loan of spirituous, vinous and malt
liquors in Woodford county, Ky., such a prohibition
to apply also to druggists" in said county? Section
61 of the Constitution uses the words "spirituous,
vinous or malt liquors." In section 2554, Ky. Stats.,
1903, the same words are used. The act of March
14, 1906 (Laws 1906, p. 86, c. 21), which is now sec-
tion 2560, Ky. Stats., 1903, uses the words "spirit-
uous, vinous, malt, or other intoxicating liquors," and
the county judge in his order used the phraseology

of that act. The act of 1906 simply repeals section 2560 of the former local option law, and substitutes a new provision in its stead. It did not change any of the other provisions of the act. The law for calling the election is still to be found, as before, in section 2554, and the penalty for violating the law, in section 2557. Section 2560 must be read in connection with the other words of the act. When the Legislature used the words "or other intoxicating liquors" in the act of 1906, it, no doubt, had in mind section 2557a, Ky. Stats., 1903, which makes the sale of "any beverage, liquid mixture, or decoction of any kind which produces or causes intoxication" a violation of the local option law. The addition of the words "or other intoxicating liquors" in the act of March 14, 1906 (Laws 1906, p. 86, c. 21) in no wise changed the sense, for, under the existing law, the amendment would have had precisely the same effect if these words had been omitted. By the old law, no "beverage, liquid mixture, or decoction of any kind which produces or causes intoxication" can be sold legally in a local option district, and, if the act of 1906 had simply used the words "spirituous, vinous or malt liquors," the legal effect of the act would have been precisely the same as it is now. The addition of the words "or other intoxicating liquors" in the orders of the court and the sheriff's notice added nothing to the sense, and took nothing from it. The legal effect was the same as if these words had not been used.

The county court had only ordered an election to be held in the county of Woodford, and only a notice for the election for the county had been given. There was no order for an election in the city of Versailles, and no notice that such an election would be held. In canvassing the vote, therefore, the canvassing

officers properly canvassed the vote of the county, and certified it accordingly, for there was nothing to authorize them to make a separate canvass or a separate return as to the city of Versailles. The appellants were not entitled to an injunction restraining the county clerk from spreading upon his record book the certificate given by the canvassing officers, as that certificate was legal, and was the only certificate which the canvassing officers were authorized to make. The canvassing officers are not a party to these proceedings; but, if they were, the result would be the same. They could not be required to certify the result in an election which had not been ordered to be held, and of which no notice had been given. The difficulty in the case probably arises from the fact that, when the act of 1906 was passed, there were some newspaper publications to the effect that the act made cities of the first, second, third, and fourth classes a unit, and the remainder of the counties in which such cities were situated outside of the city another unit, for local option purposes. But this is not the language of the act. The act makes the county the unit. It does not except cities of the first, second, third, and fourth classes out of the operation. It only allows them to vote on the same day that the county votes. If the act had excepted cities of the first, second, third, and fourth classes out of its operation, then the position taken for appellants could be maintained; but the act was evidently drawn intentionally to avoid this very thing. The county is made the unit, and the city within the county is bound by the action of the county, unless an election is held for it on the same day with the county; and, in that event, as some force must be given to every part of the act, and the privilege given the

city is not an empty form, it must mean that, when the election is held for the city on the same day on which an election for the entire county is held, its vote is to be counted separately, and is to have effect, although the city may vote one way, and the county another. In the case at bar, as no election was held for the city on the day when the county election was held, the vote of the county must control. The precincts within the city of Versailles, when an election is held for the entire county, and not for the city, stand just as any other precincts in the county. The purpose of the elcetion is to ascertain the will of the county as a whole, not the will of a particular precinct. If the county should vote in favor of the sale, the precincts which vote against the sale would not have the right to have their vote so recorded, and the law declared thereafter in force in those precincts. Unless an election is held for the city on the same day as the county election is held, the vote of the county as a whole must control.

. By section 978, Ky. Stats., 1903, appeals are allowed from orders of the county court in certain named cases, and "in all other cases allowed by law." Orders calling an election in local option cases are not mentioned, nor have we been able to find any provision of law allowing an appeal from an order of the county court in such matters. If the county judge refuses to order an election when the statutory requirements are complied with, he may be compelled by mandamus to act; but his discretion cannot be controlled by mandamus. Although a day is named in the petition for the election, the county judge may fix another day in his discretion, not earlier than 60 days after the application is lodged with him. When a petition is filed for an election in an entire county,

and it appears that a city of the first, second, third, or fourth classes desires to vote on the same day, the county judge should so frame his orders that justice may be done to all parties. If a petition is filed for an election in an entire county, and also a petition for an election in a city of the first, second, third, or fourth class within the county, while the county judge cannot be required by mandamus to name a certain day for the county election, when he has fixed the day for the county election, he may be required by a mandatory injunction to fix the same day for the city election, if he should refuse to do so, for in no other way may the rights of the city under the act be preserved. In the case at bar, the county judge was required by statute to order the county election at the July term as he did, and under the facts shown he had no authority to order an election for the city of Versailles at that term, as there was no sufficient petition before him, after the one which had been filed was withdrawn. Under the circumstances, it would have been proper for the county court to have set the date of the county election a month later, so as to have given an opportunity for the town to get up its petition and have an election ordered on the same day; but he was not asked to do this. As no appeal lies from his order directing the election to be held, we cannot review it. As the county judge has a discretion in fixing the day for an election, he cannot be controlled by mandamus as to what day he shall fix. His discretion is not to be exercised in the interest of either side, but to give both sides a fair show under the law. A city of the first four classes is entitled to vote on the same day as the county, if the necessary petition for this purpose is filed, and the county judge in the discharge of

his official duty should in this, as in all other matters exercise his discretion to prevent an advantage being taken and secure justice. The trouble here seems to have grown largely out of a misapprehension of the meaning of the act, and there appears no error in the rulings of the county judge.

The constitutionality of the act of 1906 was affirmed by this court in the opinion this day delivered in the case of Trustees of New Castle v. Scott, 101 S. W. 944.

The judgment in each case is therefore affirmed.