# Horton, et al. v. Botts, et al.

(Decided March 13, 1914.)

## Appeal from Montgomery Circuit Court.

1. Intoxicating Liquors—Local Option Election—Number of Petitioners Required to Authorize Ordering or by Country Court.—Section 2554, Ky. Stats., requires that, to authorize the calling by the county court of a local option election for the county, the petition must contain names of qualified voters from each precinct of the county equal to 25 per cent of the votes cast at the last general election in each of such precincts.

2. Intoxicating Liquors—Withdrawal of Names From Petition—Revocations of Withdrawals.—Petitioners for an election under the local option statute have the right, before the order is entered calling the election, to withdraw their names therefrom, and after making such withdrawal may also be allowed to revoke same, before the order calling the election is entered; both being allowable under Section 134, Civil Code, applicable to such a special proceeding, which provides that a pleading or proceeding may be amended "by adding or striking out the name of a party."

3. Intoxicating Liquors—Filing of Supplemental Petitions Containing Additional Names—When Permissible.—Section 134, Civil Code, permits supplemental petitions containing additional names of qualified voters from any precinct of the county, requesting the calling of the election, to be filed, as in the nature of amendments, at any time before the entering of the order by the county court calling the election.

4. Intoxicating Liquors—Duty of County Court After Filing of Supplemental Petitions For the Election.—When supplemental petitions containing additional names of qualified voters, requesting the calling of the election are not filed until the day of a regular term of the county court on which the election may be ordered, and such additional names are required to authorize the calling of the election, it is the duty of the county court to let the proceeding lie over to the next regular term of the county court or for a shorter reasonable time, to include which, the regular term may by order be extended, for the purpose of enabling legal voters of the county, who oppose the calling of the election, to make the necessary investigation as to the qualification as legal voters of the signers of the supplemental petitions; and the failure of the county court to pursue this course under the circumstances indicated will invalidate the election.

5. Intoxicating Liquors—Election Must Be Ordered by County Court—Order Cannot Be Made in Absence of the Jurisdictional Facts.—The election cannot be held without an order of the county court, and the statute does not permit the county court to order the election unless qualified voters equal in number to 25 per cent of the legal voters in each precinct at the last general election peti-

tion for it; it not being contemplated that there should be the expense and trouble of an election before the jurisdictional facts warranting the county judge in making the order were made to appear to him. Therefore, the thing left open to the county court to hear evidence upon, and concerning which it may exercise judgment is, have the requisite number of legal voters signed the petitions and if the court may hear evidence in order to determine these facts, such evidence ought to be allowed from those opposing the election as well as those favoring it, and both given a reasonable opportunity to be heard.

O'REAR & WILLIAMS for appellants.

LEWIS APPERSON, H. R. PREWITT and HAZELRIGG & HAZELRIGG for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By order of the Montgomery County Court an election was held in that county September 30, 1912, to take the sense of the voters as to whether spirituous, vinous or malt liquors should be sold therein. There were 2354 votes cast; of these 1628 voted against and 726 for the sale of liquor; giving the "drys" a majority of 902 votes.

Within the time prescribed by law the appellee, relying on the alleged invalidity of the order of the county court directing and calling the election, instituted a contest which resulted in a finding by the Board of Contest against the validity of the election. On appeal the circuit court rendered a like judgment, and from that judgment this appeal is prosecuted. The original petitions asking the calling of the local option election were filed in the county court August 1st, 1912; on August 23, which was the next regular term of the county court, petitions containing additional names asking for the calling of the election were filed and on the same day the order of the county court requiring the holding of the election and fixing the date thereof was entered.

The ground upon which the invalidity of the order for the election was rested by the finding of the board of contest and the judgment of the circuit court was the want of jurisdiction in the county court to make the order, because of the absence from the petitions asking the order, of the names of a sufficient number of qualified voters from each precinct of the county to constitute 25 per cent of the votes cast therein at the last preceding election; it being held that the signers of the petitions from Aaron's Run precinct, and precinct C. of ward 3 in the city of Mt.

Sterling, respectively, did not amount to 25 per cent of the votes cast therein at the last preceding election. If convinced by our consideration of the case that this is true as to any one of the precincts mentioned, it must necessarily result in an affirmance of the judgment declaring the election void.

It is insisted for appellants that the county court had jurisdiction to order the election if the petitions as a whole contained as signers the names of a sufficient number of qualified voters to constitute 25 per cent of all votes cast in the county at the last preceding election. In other words, that the county must be the unit in ordering, as well as voting in, a local option election. Manifestly this contention cannot be sustained. Section 2554, Ky. Stats., under which a local option election for the entire county may be called, provides: "Upon application by written petition, signed by a number of legal voters in each precinct of the territory to be affected equal to 25 per cent of the votes cast in each of said precincts at the last preceding election * * * it shall be the duty of the judge of the county court in such county at the next regular term thereof after receiving said petition, to make an order on his order book, directing an election to be held."

In construing this statute we have uniformly held that to authorize the calling of a local option election for the county, the petition must contain names of qualified voters from each precinct of the county equal to 25 per cent of the votes cast at the last general election in each of such precincts. McAuliffe v. Helm, 157 Ky., 626; Smith v. Patton, 103 Ky., 452; Nall v. Tinsley, 107 Ky., 441; Barton v. Edwards, 143 Ky., 721; Cooper v. Cardwell, 151 Ky., 620. The case of Com. v. Jones, 27 R., 16, does not, as claimed by counsel for appellants, conflict with the construction given the statute in question by the authorities, supra. In Commonwealth v. Jones the prosecution grew out of Jones' violation of the local option law by selling spirituous, vinous and malt liquors by retail in a magisterial district where it was in force. The principal question in the case was as to the construction to be given the order calling the local option election, and while it was held to be ambiguous in its terms, it was on the whole treated as substantially showing that the petition upon which the election was ordered was signed by a sufficient number of voters in each precinct to constitute 25 per cent of the

number of votes cast therein at the last preceding general election.

It next becomes necessary to determine whether the petitions upon which the election was ordered contained the number of petitioners from each precinct of the county necessary to confer jurisdiction upon the county court to make the order.

The situation as to the Aaron's Run precinct was as follows: It is conceded that in the last preceding general election, held in November, 1911, there were cast in this precinct 170 votes. Therefore, the names of 43 legal voters were required on the petition from that precinct. The original petition contained the names of 50 signers. It was shown that two of the persons who signed this petition were not legal voters; 14 withdrew their names, but one of the fourteen revoked his withdrawal before the county court had stricken his name from the petition following the withdrawal. This left 35 of the original names or eight signers less than the required 43 from that precinct. Upon ascertaining this shortage appellants produced and offered to file an additional or supplemental petition containing the names of ten persons claimed to be legal voters of the Aaron's Run precinct. The county court permitted this additional or supplemental petition containing the ten names to be filed, and by counting the ten names thus added from the precinct, with the 35 remaining of the original names, held that in this manner two more than the required per cent of voters in that precinct had petitioned for the order requiring the holding of the local option election.

In precinct C, third ward, of the city of Mt. Sterling the same condition was presented as in the Aaron's Run precinct, except that there was a controversy as to the number of votes that were cast in the city precinct in 1911; it being the contention of appellants that there were 222 votes then cast, and that of appellees there were 235; the controversy arising from the certificate as to the 1911 election appearing on the stub of the ballot book used in the precinct in question, which is as follows: ''Number of ballots counted as valid—222—Number of ballots spoiled—3. Number of ballots questioned or rejected—10. Whole number of ballots cast—235. Number of ballots remaining in the book not used and which were burned—150.'' We regard it unnecessary to decide which of these contentions should prevail, as in passing upon the real questions to be decided it will be safe to assume that

only 222 votes were cast in that precinct at the regular election in 1911. If, therefore, there were 222 votes cast, 25 per cent of that number would be 56, and this number of names of legal voters was necessary on the petition filed in the county court from that precinct. Seventy-two names were signed to the petition. Of these two were shown to be disqualified. Thirty-two asked to withdraw their names, but nine of these revoked their withdrawals before the court acted upon their requests to withdraw. This left but 47 names on the original petition, 9 less than the necessary per cent required from the precinct, but the court permitted the filing of a supplemental petition containing thirteen new names of persons claimed to be legal voters of the precinct, which brought the number up to 60 names, four more than the required number.

The first question presented is, had the petitioners who revoked the withdrawal of their names from the petitions asking for the calling of the local option election, the right to do so under the circumstances appearing in this case. These revocations were in writing, addressed to the county court, as were the previous requests for the withdrawal of the names; and it appears from the record that such revocations were presented before the court had acted upon the written request from the same persons for the withdrawal of their names from the petition. In O'Neal v. Minary, 125 Ky., 571, we held that petitioners for an election under the local option statute might, before action was taken by the court on the petition, be permitted to withdraw their names therefrom. Express authority for this ruling is not found in the statute, so it must have been based upon the theory that the right of the petitioner to withdraw his name in the state of case indicated is an inherent or natural right, the exercise of which is implied from his statutory right to petition for the election. The only reason given for the ruling is found in the following excerpts from the opinion: "There must be a sufficient number of petitioners asking the calling of the election. No one is responsible for the cost of the proceeding but the petitioners. No one is required to make a deposit but the petitioners. If litigation ensues, no one may be held responsible for the cost but the petitioners. It would, therefore, be a harsh rule to say that a person who had signed such a petition cannot withdraw from it before it is accepted. Remonstrances against the grant-

ing of license are frequently withdrawn in county courts, although the writing has been filed with the court; and there is no sound reason why the same rule should not apply to a petition for an election under the local option act, before it is acted on by the county court.''

As, according to this process of reasoning, a petitioner who becomes unwilling to be held for the cost of the proceeding, may be allowed to withdraw his name from the petition before the order calling the election is entered, would it not be equally logical to say that if, after requesting the withdrawal of his name from the petition, he changes his mind and concludes to stand by his original act in signing it, should he not be permitted to revoke such withdrawal; provided, the revocation be made before the withdrawal becomes effective and before the court takes action upon the petition? As well argued by counsel for appellants, the right of the petitioner to withdraw his name from the petition is not greater than that of a plaintiff to dismiss his suit without prejudice; and if, after entering his motion to dismiss his petition, the plaintiff should ask leave to withdraw the motion before the court has acted upon it, could it be maintained that leave to him to withdraw the motion to dismiss was a matter beyond the discretion of the court to allow? We are also of opinion that the ruling of the court, in permitting both withdrawals and revocations of withdrawals by petitioners, was allowable on the ground that section 134, Civil Code, provides that a pleading or proceeding may be amended by ''adding or striking out the name of a party.'' In view of the fact that the revocations of withdrawals in this case were made before the county court had acted upon the applications to withdraw, and before final action had been taken by it upon the petitions for the local option election, it is our conclusion that the revocations were properly allowed.

But, as the counting of the names of voters permitted to revoke the previous withdrawal of their names from the petitions, still left the number of petitioners from the Aaron's Run Precinct and Mt. Sterling, Third Ward, C. Precinct, short of the necessary 25 per cent required from each of them; and the additional names necessary to make the 43 legal voters required from the Aaron's Run Precinct, and the required 56 from the Mt. Sterling, Third Ward, C. Precinct, were obtained by means of the supplemental petitions from those precincts, the

court permitted to be filed, it becomes necessary for us to decide whether the filing of the supplemental petitions should have been allowed; and, if so, whether the additional names of legal voters furnished by them, with those of legal voters left on the original petitions, authorized the order of the county court calling the election. We know of no reason for holding that the county court did not have the power to allow the supplemental petitions to be filed. With respect to amendment of the proceedings in a local option election contest, we in Wilson, etc. v. Hines, etc., 99 Ky., 221, said:

"The law regulating such contests (Ky. Stats., section 1535) requires that the notice shall state the grounds of the contest and provides that 'none other shall afterward be heard as coming from such party.' Under this statute a contestant is not allowed to set-up, by way of amendment, an entirely new ground of contest, in addition to those stated in this notice, but he is not thereby precluded from amending and making more specific and definite any ground that is embraced in the notice. This may be allowed, and in fact may be required to be done under the Civil Code (Section 134), which applies to proceedings of this kind as well as to regular actions, and under which it was proper for the board and the lower court to permit the contestants to amend, as was done, in such manner as to make definite the charge that the act under which the election was held was not in force and the reason for it. That did not in this case make a new or additional ground of contest, but simply made more definite and certain one of the grounds of contest stated in the notice."

If the amendments for the purposes indicated in the opinion, supra, are permissible in proceedings appertaining to a contested local option election, even greater is the reason for permitting them in the court invested with the jurisdiction to order the election. We conclude, therefore, that, as the supplemental petitions, containing names of additional voters from each of the precincts in question, presented to the county court were in the nature of amendments to the proceeding, the ruling of that court in permitting them to be filed was not error.

The additional names of petitioners for the local option election contained in the supplemental petitions, with those presented by the original petitions from each

of the same precincts, furnished for the first time the whole number of petitioners required from each of them; but the county court on the day they were filed, and without giving appellees time or opportunity to ascertain whether any of the additional voters whose names appeared thereon were not legal or qualified voters, entered the order calling the election. It was held both by the board of contest and circuit court that in thus ordering the election the court did not have before it the jurisdictional facts authorizing the entering of the order. It is appellees' contention that the proceeding should have been passed or laid over to the next succeeding regular term of the county court for final determination, which would have afforded the county court the only correct means of judicially determining whether the additional petitioners were legal voters of the precincts in which they claimed to reside.

This contention suggests the inquiry, why does the petition have to lie over from the term at which it is filed to the next regular term of the county court? In a number of cases we have held that a local option election called at the same term as that at which the petition is filed is void, Wilson, etc. v. Hines, etc., 99 Ky., 229; Smith v. Patton, 103 Ky., 452. This was because the statute requires the petition to lie over from one court to the next. It need not be filed at a regular term, but the filing may be done at a called term of the court—the filing thereof being shown by an order entered of record —and the election ordered at the next regular term of the county court, though it begin but a day or two after the called term at which the petition is filed.

There are, we think, two reasons for the statute's requiring the petition to lie over: First, that the county court may be enabled to determine judicially whether the petitioners are legal voters of the precincts in which they claim to reside; second, that voters of the county who may oppose the calling of the election may have an opportunity of showing to the county court who, if any, of the petitioners are not legal voters of the precincts in which they claim to reside. Conceding that the legal voters who petition for the election have the right to act for the public as well as themselves in asking that it be called, it is but fair to conclude that the legal voters, opposing the calling of the election, have an equal right to act for themselves and the public in showing that

those signing the petition are not legal voters of the precincts in which they claim to reside. The thing left open to the county court to hear evidence upon, and, concerning which it may exercise a judgment, is, have the requisite number of legal voters signed the petition; and if the court may hear evidence in order to determine these facts, such evidence ought to be allowed from those opposing the election, as well as those favoring it, and both given a reasonable opportunity to be heard.

It is argued, however, by counsel for appellants, that, as the original petitions for calling this election were filed August 1, 1912, and the order calling the election was not entered until August 23, 1912, no reason is apparent for appellees' complaint that they were not given time beyond the latter date for furnishing evidence of the disqualification of the voters whose names appear to the supplemental or amended petitions. This argument ignores the fact that the supplemental or amended petitions, containing the additional names, were not filed until the day upon which the order calling the election was entered. It is patent that the county court did not give appellees any time whatever to ascertain how many of the signers of the supplemental petitions, if any, were legal voters of the precincts in which they claimed to reside. We think the county court should have afforded appellees the opportunity to make the necessary investigation as to the qualifications as legal voters of these signers of the supplemental or amended petitions. The necessary time therefor could have been afforded by allowing the proceeding to lie over to the next regular term of the county court, or for a shorter reasonable time, to include which, the regular term, at which the supplemental or amended petitions were filed, might, by a further order have been extended, and by this means the order calling the election could still have been made at a regular term of the county court next succeeding the filing of the original petition. But as neither of these courses was pursued by the county court the order calling the election, if not absolutely void, is voidable.

As said in Wyatt, Judge v. Ryan, etc., 113 Ky., 306: ''The election cannot be held without an order of the county judge. The purpose is not to have the question submitted unless qualified voters, equal in number to 25 per cent of the legal voters at the last general election,

desire it; and it was not contemplated that there should, be the expense and trouble of an election before the jurisdictional facts warranting the county judge in making the order were made to appear to him. It is a special proceeding, and the jurisdictional facts should have been established before the county judge would have been warranted in making the order. It was not necessary that the petition should show that the signers to the petition were in fact legal voters—that is, the facts as to their residence in the county or precinct need not be shown in the petition; and it was not necessary for the petition to show that the signers were equal in number to 25 per cent of the votes cast in the precinct at the last preceding general election, but these facts should have been made to appear before the county judge on the hearing of the motion, and the genuineness of their signatures should also have been shown. Until this was done he was not authorized to make the order, and the mandamus against him was, therefore, improperly awarded.''

It is manifest from the record before us that the county judge did not have before him in this case the number of petitioners from each precinct of the county required to order the election, until the supplemental or amended petitions containing the additional signers were filed, if then shown; and they were not filed until the time at which, or the day upon which, the order calling the election was entered. It is ordinarily true that upon the filing of an amended pleading, it is to be treated as relating back to the time of the filing of the original pleading. But this rule should not be made to apply where, as in this case, the facts necessary to give the court jurisdiction to act, if presented at all, were not shown until the amendments containing the names of the necessary additional voters were filed, which was on the day the election was ordered, therefore the filing thereof required the proceeding to lie over to a later day, to which the court might have adjourned, or to the next regular term of the court. In the situation presented, the county court should not have ordered the election, at the time it was done, upon the mere prima facie showing of the jurisdictional facts made by the petitions for the election, as that day amended by the addition of the names of voters contained in the supplemental petitions, in view of the fact that the provision of the statute re-

quiring the petitions, as thus amended, to lie over, had not been complied with.

To hold otherwise, would be to declare that only signers of the first or original petitions for the local option election, filed with the county court, could be subjected to investigation as to their legal status as voters; and that persons illegally claiming to be residents and qualified voters of certain precincts in the county, who might wish to aid in procuring the calling of the local option election, could, notwithstanding their disqualification, escape such investigation and be counted as legal voters, by signing a supplemental petition filed on the day the order calling the election is entered. While the petitions from the Aaron's Run and Mt. Sterling, Third Ward, C. Precinct, as amended by the addition of the names of alleged voters contained in the supplemental petitions from those precincts, respectively, might, upon investigation, have been found to constitute 25 per cent of the votes cast in these precincts respectively, in the last preceding election, and, together with the other petitions filed, might have furnished all the facts necessary to give the county court jurisdiction to order the election, still, as no investigation was made, or permitted, of the names of alleged voters contained in the supplemental petitions from these precincts, it does not appear that the county court, in fact, had such jurisdiction or that it was in the position to exercise such jurisdiction, at the time of entering the order calling the election. It does, however, appear from the record that the county court, by ordering the election on the day the supplemental petitions were filed, refused appellees an opportunity to ascertain whether the names appearing to the supplemental petitions from the two precincts mentioned were those of legal voters in those precincts; and under these circumstances it cannot be known that the county court had before it the jurisdictional facts authorizing the ordering of the election.

As the statute makes no provision for an appeal from the decision or any ruling of the county court in ordering the holding of a local option election, the board of contest, and also the circuit court, upon the appeal from the finding of the board, had the right to pass upon all questions affecting the validity of the order of the county court calling the election and any ruling made by it, in regard thereto. This was so decided in Wilson v. Hines,

*supra,* where it was held in substance that a contested election board has jurisdiction to pass upon the constitutionality of the act under which the election was held, and that a judgment by it to the effect that the act under which the election was held was unconstitutional and the election void, was a final judgment from which an appeal could be prosecuted. So, it is not material in this case whether the order of the county court calling the election is void or merely voidable; in either event it was the province of the contest board and circuit court to determine whether the order and election were valid or otherwise. Both declared them invalid, and no reason appearing from the record for disturbing the judgment of the circuit court, it is affirmed. The whole court sitting. Judge Hannah dissenting.

DISSENTING OPINION BY JUDGE HANNAH.

In so far as the opinion of the majority of the court rests upon and re-affirms the ruling (1) that the petitioner for a local option election may withdraw his name therefrom at any time before the order is entered calling the election; and in so far as it rests upon and re-affirms the ruling that (2) persons opposed to the calling of the election are entitled, as a matter of right, to an opportunity to present proof as to the sufficiency of the petition; and, from so much of the opinion as announces the holding that (3) where there have been new petitioners substituted in the place of original petitioners who have withdrawn, the petition must necessarily be laid over to give those opposed to the calling of the election an opportunity to ascertain whether any of the substituted names are those of unqualified persons, I dissent therefrom.

1. Why should a petitioner be permitted to withdraw his name from the petition? In the opinion of the majority of the court, this ruling is attempted to be justified upon three grounds: First upon the ground stated in the case of O'Neal v. Minary, 125 Ky., 571, 30 R., 888, 101 S. W., 951, in which case this court first announced the ruling that a petitioner may withdraw his name at any time before the order is entered calling the election, viz: that because the petitioners are responsible for the costs of the "proceeding," they should be permitted to withdraw. For the costs of what "proceeding" are they

responsible? Were it not for the rulings of this court permitting petitioners to withdraw their names, and permitting, as a matter of right, those opposed to the calling of the election to present proof as to the sufficiency of the petition, there would be no "proceeding;" consequently no costs. The statute does not provide for, nor contemplate the incurring of any costs before the entry of the orders in the order-book by the clerk, calling the election; and section 2559, Kentucky Statutes, specifically provides that an amount sufficient to cover all costs that may be incurred must be deposited with the county judge before the order calling the election may be entered.

There is no authority in the statute for such withdrawal of the names of petitioners, nor for such attack upon the sufficiency of the petition by those opposed thereto. But, in the majority opinion, this court, while admitting that express authority for such withdrawal is not to be found in the statute, attempts to justify the ruling permitting withdrawals; upon the second ground, that such is an inherent and natural right, the exercise of which is to be implied from the statutory right to sign the petition for the election. I concede that while the petition is in the hands of the petitioners, they may wihdraw, but when it is filed, the interests of the public generally attach thereto, and petitioners should not be permitted, in the absence of statutory authority, to trifle with the court, or betray their co-petitioners by withdrawing their names therefrom, as was done in this case.

There is nothing obscure nor complicated about a petition for a local option election. Every man who signs such a petition knows its import. Because of that knowledge, he should not be permitted to play fast and loose with the court and with the other signers. When the petition is filed, his right to withdraw therefrom should terminate. To hold otherwise, is to pervert the legislative intent, to add to the statute that which it does not contain, and to open the door to treachery, corruption and fraud. It is the province of courts to construe legislation, not to legislate; to interpret the law, not to create rights.

Again, if as stated in the majority opinion as a third ground of justification for the ruling permitting peti-

tioners to withdraw, a petition for a local option elec-
tion initiates a "proceeding, having parties" within
the meaning of section 134, Civil Code, then the end of
that proceeding must be a judgment; and as the statute
makes no provision for an appeal from the finding of
the county judge as to the sufficiency of the petition, that
judgment must be final. And the vital point determined
in that controversy between the parties, that is, between
those petitioning for and those opposed to the calling
of the election, is the sufficiency of the petition.

This court, therefore, by holding that the determina-
tion of the sufficiency of the petition by the county judge
is a proceeding having parties within the meaning of
Civil Code, section 134, and is not an ex parte proceed-
ing, is placed in the attitude of holding that the suf-
ficiency of a petition for a local option election may be
attacked before the county judge, by those opposed to
the calling of the election; that after a judicial determin-
ation of the sufficiency of such petition by the county
judge upon a hearing in which those opposed thereto
are entitled, as a matter of right, to a reasonable oppor-
tunity to present proof upon the vital question involved,
that, that same vital question of the sufficiency of the
petition may again be litigated and again adjudicated
upon contest proceedings, despite the former adjudica-
tion.

Moreover, where a court judicially considers and ad-
judicates the question of its own jurisdiction (and this
court has held the question of the sufficiency of the peti-
tion to be, and it is, a jurisdictional fact) and decides that
the facts exist which are necessary to confer jurisdic-
tion, that finding is conclusive, and may not be contro-
verted or assailed in a collateral proceeding. 23 Cyc.,
1088

This court is also in the attitude of holding that not-
withstanding the fact that the decision of a court upon
the question of its own jurisdiction cannot be collaterally
attacked, the sufficiency of a petition for a local option
election and the consequent jurisdiction of the county
court judge to enter the order calling the election, may
again be litigated and determined upon collateral attack
in contest proceedings instituted under the statute.

I take it to be self-evident under the law, that, either
the determination of the sufficiency of the petition by

the county court judge must be ex parte, and, therefore, not conclusive, and because ex parte, it is subject to collateral attack; or, that such sufficiency cannot be questioned collaterally upon contest proceedings.

In Howard v. Stanfill, 31 R., 207, 102 S. W., 831, this court held that where the county judge states that he has personal knowledge of the residence of the petitioners and of the fact that they constitute 25 per cent of the voters of the precinct, he is not required to hear evidence as to the sufficiency of the petition.

In McAuliff, et al. v. Helm, et al., 157 Ky., 626, this court said that "the county judge had a discretion as to trying the application in so far as it applied to the verification of the petition." In that case, the appellants insisted that the petitioners were trying to "railroad" the petition through without a hearing from the opposition, and those opposed to the calling of the election moved the court to continue the matter until the next regular term; and that motion having been overruled, they then moved the court to continue it for three days; and that motion having been overruled, they then moved the court to require oral proof in court subject to cross-examination, upon the question of the authenticity of the signatures, and the qualifications of the petitioners; and that motion having been overruled, they then moved the court to grant them thirty minutes to examine the petition of each of the twenty precincts as it should be called, and this motion was also overruled. It was fully shown by the record in that case that the petitioners were trying to "railroad" the petition through (as they had a right to do) and that opinion says: "He (the county judge), had jurisdiction to pass upon the question before him; if he erred, his ruling is not void, but erroneous only, and can be corrected by contest proceedings where the sufficiency of the petition is still subject to review." Could it be more clearly or more forcibly stated than this language imports, that the proceeding before the county judge is an ex parte proceeding, and that the county court judge cannot be interfered with as to the manner which he may choose to adopt, to ascertain and determine the sufficiency of the petition? If the whole matter can again be opened up, what rule of law is there to prevent the county judge from going to his room, and locking himself therein, and alone, and there making the ex-

amination which satisfies him of the sufficiency of the petition?

This brings us to the question:

2. Why should those opposed to the calling of the election be entitled as matter of right to an opportunity to present proof as to the sufficiency of the petition.

The statute does not so provide; and a reasonable interpretation of the section involved will force one to the conclusion that had the Legislature intended that there should be a contest before the county judge, before the election is ordered, the number and qualifications of those having such right to attack the sufficiency of the petition, would have been fixed by the statute, as is done in that section which provides for a contest of the election.

Section 2566, Kentucky Statutes, provides that there shall be at least *ten citizens and legal voters of the* county, city, town, district and precinct, to maintain contest proceeding after the election has been held. Unless there are as many as ten contestants, and unless they are all citizens and legal voters of the territory to be affected, there can be no contest proceedings instituted. And if a contest is instituted, unless there are as many as ten contestees, and unless they are citizens and legal voters of the territory to be affected, there can be no resistence of such contest. Under the majority opinion's rule of fairness, there is nothing to prevent one legal voter from appearing before the county judge and as a matter of right, resisting the making of an order calling such election. (In the case at bar, the record shows only three opposers in the county court.)

It is true that it is said in the majority opinion that "conceding that the legal 'voters' who petition for the election have the right to act for the public as well as for themselves in asking that it be called, it is but 'fair' to conclude that the legal voters opposing the calling of the election have an equal right to act for themselves and the public in showing that those signing the petition are not legal voters of the precincts in which they claim to reside." But it fails to limit the number who may do so, and the opinion must under our Code be construed to mean that one voter may so oppose the calling of the election.

If this court, in construing statutes, is to create rights not provided for by statute, because the statute failed to be fair in this particular, then it should treat those opposed to the calling of the election with the same kind of fairness as that with which the statute treats those in favor of calling the election; and the court should say to those opposing the election, that, inasmuch as the statute requires 25 per cent of the legal voters to sign a petition for the election before it can be ordered, it is but fair that you who are opposed to the election should be required to have 25 per cent of the legal voters sign a protest before you shall be heard· as matter of right, before the county judge.

It seems to me that had the Legislature intended that the examination of the sufficiency of the petition by the county judge should be anything but ex parte, we would find express provision therefor in the statute, in the same manner as we find therein provision for contest, viz.: that not less than ten legal voters of the territory affected shall have the right to contest such election after it has been held, and not less than ten legal voters of said territory may appear to resist the contest.

The statute does not provide that any one, as a matter of right, may attack the sufficiency of the petition before the county judge; but it does provide for a contest of the election, and upon that contest, want of jurisdiction of the court to enter the order calling the election, because of the insufficiency of the petition is ground for invalidating the election. This court has so held.

Shall there be two adjudications of the same question? Shall the sufficiency of the petition, a jurisdictional fact, be attacked and determined before the county judge in a proceeding not provided for by statute, but in which, under the rulings of this court, those opposed to the election may as a matter of right be heard, and then, when such sufficiency of the petition is determined upon such proceeding, shall the same question be again litigated upon collateral attack by the same parties, and again determined judicially upon contest proceedings?

As I read the statute and interpret the legislative intent, when the petition is filed and the proper deposit of money is made, and when the county judge is satisfied that the petition is sufficient, no matter how he arrives at that conclusion, the requirements of the law are fully met, so far as he is concerned. If, in fact, the petition is

not sufficient, that insufficiency may be shown upon the contest proceedings as provided for by statute.

I am aware that the statute provides that the order calling the election shall not be entered until the next regular term after the filing of the petition; but, in the absence of anything to the contrary in the statute, I am justified in believing it to be the legislative intent that such interval is solely for the purpose of enabling the county judge to consider the petition, and to reach his decision as to the sufficiency thereof in such manner as he may desire.

Believing as I do that the two rulings of this court just considered are unsupported by statutory authority and unjustified by necessity; that in announcing them the court has departed from the legislative intent; that the enunciation of these rulings has been productive of much harm and no benefit; that the form of proceedings which under these rulings of this court has gradually grown up in this State, has become such as no court should tolerate; that in adhering to its original error, this court is being forced to the adoption of still more untenable rulings, as is illustrated in the present majority opinion, I feel that it is time we return to the legislative intent, and relegate to the contest proceedings provided for by the statute, all questions as to the sufficiency of the petition for a local option election.

3. I also, as stated, dissent from the opinion of the majority of the court in so far as it announces for the first time the ruling that when new names are substituted upon the petition in lieu of the names of petitioners who have withdrawn, the petition must necessarily be laid over to give those opposed, an opportunity to ascertain whether the new names are those of qualified voters.

Of course, if it were rightly held that those opposed to the calling of the election are entitled, as a matter of right, to attack the sufficiency of the petition before the county judge, then, they would impliedly be entitled to a reasonable opportunity to make such investigation; but, believing as I do that the sufficiency of the petition may only be attacked as a matter of right, by contest proceedings, it goes without saying that I dissent from this extension of the court's original error. The untenability of the positions which this court is gradually being forced to adopt by its adherence to its original error in the O'Neal case, is here exemplified.

If, as this court rules, the petitioner for a local option election may at any time before the order is entered call-

ing the election, withdraw his name from the petition; then, while the petition is being laid over to give those opposed thereto an opportunity to investigate the qualifications of the new or substituted petitioners, other petitioners may withdraw their names. In their stead, then, still other new names must be substituted, and when this is done, under the rule announced in the majority opinion, the petition must again be laid over to give those opposed thereto an opportunity to investigate the new signers. So, under the rule just announced, this could be carried on indefinitely. We are thus presented with the spectacle of one departure from the legislative intent leading to another, and where the end shall be is uncertain.

No stronger illustration of this deplorable situation is needed than is presented in the few examples noted in the opinion in the case of McAuliffe v. Helm, supra, out of the many contained in the record, in which it is shown that a number of the signers of the original petition first withdrew, then revoked their withdrawals; the evidence showing that one of them readily signed every paper that was presented to him, and that on the witness stand, he answered almost every question by saying "wet."

Again, I say, it is the duty of this court to take the statute as it is found; to construe it as it is found; to add thereto nothing; to take therefrom nothing; and to interpret the law, not to attempt to create rights. Every departure from this duty can only terminate as it has terminated in this case, in the gradual adoption of untenable position demanded by adherence to original error.

4. As to the facts shown by the record in the case at bar, the court in its majority opinion says:

"It is patent that the county court did not give appellees any time whatever to ascertain how many of the signers of the supplemental petitions, if any, were legal voters of the precincts where they claimed to reside. We think the county court should have afforded appellees the opportunity to make the necessary investigation as to the qualifications as legal voters of these signers of the supplemental or amended petitions. The necessary time therefor could have been afforded by allowing the proceeding to lie over to the next regular term of the county court, or for a shorter time, to include which the regular term at which the supplemental or amended petitions were filed, might by a further order have been ex-

tended, and by this means the order calling the election could still have been made at a regular term of the county court next succeeding the filing of the original petition; but as neither of these courses was pursued by the county court, the order calling the election is not absolutely void, but voidable.''

This reasoning is in conflict with McAuliffe v. Helm, supra, as in that case, the court refused the petitioners thirty minutes to examine the precincts as they were called, and this court upheld the action of the county judge.

In the case at bar, there were only ten names to the supplemental petition from Aaron's Run Precinct, and thirteen to that from Precinct C., Third Ward of City of Mt. Sterling, the only precincts about which there is any controversy.

If the court failed to give thirty minutes for the opposition to examine all the names on the petition from the precincts of Warren County (in McAuliffe v. Helm) and such failure did not make that election void, by what process of reasoning does the majority of this court arrive at the conclusion that the election in Montgomery County was voidable because the judge failed to give the opposition thirty days to examine the supplemental petitions containing twenty-three names, all of them, no doubt, known to the county judge.

Again, the majority opinion says that ''the opportunity to make the necessary investigation should have been afforded by allowing the proceeding to lie over to the next regular term of the county court, or for a shorter time * * * and by this means the order calling the election could still have been made at a regular term of the county court next succeeding the filing of the original petition.

If it is to be the ruling of this court that a petitioner may withdraw after the petition is filed, and that those opposing the election may demand and have a postponement of the proceedings when a supplemental petition is filed at the term at which the petition is to be heard, then I heartily concur in the majority opinion in suggesting a postponement during the term, or extension of the term.

But, the same rule should be applied in this case as in all other cases, and that is: That when a party is entitled to and desires to have the court pass upon a question, he must ask a ruling of the court thereon, and it no where appears in this record that any motion or re-

quest to postpone was made. In the absence of a motion therefor, it was not the duty of the county court, even under the law as construed in the majority opinion, to grant further time. And, conceding that those opposing the calling of the election were entitled to such postponement, that right was waived by failure to assert it by motion made therefor.

This court has said so often that it may be considered as crystallized into a maxim, that elections should not be lightly set aside.

Yet this court has nullified an election of more importance to the public than an election of any candidate or set of candidates, and has defeated the expressed will of 1628 voters out of a total of 2354 voting, in a county where the normal vote is less than 2800, upon the ground that the county judge did not, upon his own motion and without request, give to three persons opposing the calling of the election thirty days in which to learn something which they doubtless already knew, or which, if they did not know, could doubtless have learned within thirty minutes, or thirty hours at the longest. And, my interpretation of the statute being so strongly opposed to such action, I am constrained to express my views and to enter my protest thereto.