## Ellingsworth, et al. v. Shacklette, et al.

(Decided December 4, 1923.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Municipal Corporations—Number of Voters Desiring Dissolution
of Charter at Time of Judgment Determining Factor.—Where a
petition is filed under Ky. Stats., section 3662a, to dissolve and
annul the charter of a town of the sixth class, the court should
not enter an order annulling the charter merely because a majority
of voters signed the petition, but must consider deaths, with-
drawals, and changes in population, and to that end should permit
the filing of amended pleadings, showing changes in the status up
to the time of rendition of judgment, and the majority should be
in favor of dissolution at the time of judgment.

J. BLAKEY HELM and WM. S. KAMMERER for appellants.

WALLACE McKAY and DELOZIER MOXLEY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Alleging that there were 242 legally qualified voters in
Jeffersontown, a city of the sixth class, and that the peti-
tioners constituted 160 of that number and a great major-
ity thereof, Joseph L. Ellingsworth and others filed their
petition in the Jefferson chancery court, second division,
to dissolve the city's charter. The action resulted in a
spirited contest which continued over a period of two
years, during which numerous demurrers, motions, plead-
ings, amended pleadings and affidavits were filed, and
many arguments heard on the questions involved. In
the meantime some of the petitioners died, while others
withdrew their names or moved away, and several new-
comers moved into the town, with the result that the
status changed from time to time, the advantage some-
times being with the petitioners and at other times with
the opposition. On March 14, 1921, the cause was re-
ferred to the master commissioner to ascertain and report
the names and number of legal voters residing in the city
of Jeffersontown on December 7, 1920, and to ascertain
and report the names and number of voters "who have
petitioned and now petition and request the court to dis-
solve and annul the charter of said city," etc. On April 29,
1922, the commissioner filed a report in conformity with
the order, and found that the petitioners had a majority
of twelve. Exceptions were filed to the report, and there-

after John R. Shacklette and others were permitted to file an amended answer alleging that thirty-three persons counted by the commissioner as petitioners had moved away and were no longer voters in Jeffersontown, that eight persons counted by the commissioner for the petition were dead, and thirty-two persons who had become residents and voters since December 7, 1920, were petitioning to be made parties in order to oppose the dissolution. At the same time the newcomers were permitted to file their intervening petition opposing the dissolution. The petitioners not only objected to the filing of the amended answer and intervening petition, but filed demurrers to each and motions to strike, all of which were overruled. Thereupon the petitioners declined to plead further and the petition was dismissed. The petitioners appeal.

It is insisted that the court erred in permitting the amended pleadings to be filed for the reason that the determining factor in the case was the number of voters at the time the petition was filed, and not the number at the time the judgment was rendered.

The proceeding was had under section 3662a, Kentucky Statutes, which is as follows:

"1. A majority of the voters residing in an incorporated town of the sixth class may file a petition asking that its charter be dissolved or annulled.

"2. Whenever a petition signed by a majority of the persons entitled to vote living within the boundary of the proposed town is filed in the circuit court clerk's office of the county in which a greater part of the town is located, not less than twenty days before the commencement of the next regular term of said court, the petitioners shall cause notice of the filing of such petition and the object thereof to be published in two issues of some newspaper of general circulation published in the county; or, if none, by notices posted up for at least ten days before the commencement of the term, one at the court house door and the others at public places within the boundary of the proposed town.

"The petition shall set out the metes and bounds of the town, and the number of voters and inhabitants resident within the boundary thereof, and such other facts as may be thought proper.

"3. A defense may be made to the petition by any voter of the town, and if a defense is made, the court shall hear and determine the same and may render judgment dissolving and annulling the charter.

"The pleadings and practice, except as herein provided, shall be the same as in equity cases; an appeal shall be from the judgment, provided the record is filed in the clerk's office of the Court of Appeals twenty days prior to the second term of the Court of Appeals after the rendition of the judgment."

The act was upheld on the ground that the only authority conferred on the court was to determine the existence of the facts upon which the statute became operative. Boone County v. Town of Verona, 190 Ky. 430, 227 S. W. 804. The purpose of the act was to permit the majority of the voters to have the charter annulled, and to that end authority was conferred on the court to hold an election by taking evidence as to the choice of the voters. Though the question is not precisely the same, we have ruled in numerous cases that signers of a petition for a local option election may withdraw their names before the petition is acted on. O'Neal v. Minary, 125 Ky. 571, 101 S. W. 951; Davis, County Judge v. Henderson, 127 Ky. 13, 104 S. W. 1009; Grover v. Newton, 154 Ky. 479, 157 S. W. 716. The reason for the rule is thus stated in Davis, County Judge v. Henderson, *supra.*

"A petition is but a formal written request or prayer for a certain thing to be done. He who signs it must do so voluntarily; otherwise he cannot be in the attitude of making a request. The signature of the petitioner is but evidence of the request or prayer. In the absence of anything to the contrary, the signature is conclusive. But, when the signer appears in court and asks that his name be withdrawn, he indicates that he is no longer a petitioner. To hold that he is is simply to make him a petitioner by a process of legal coercion, which is contrary to the very spirit of a petition."

Manifestly, the same rule applies to a signer who has since died. He can no longer be regarded as a petitioner. Not only so, but we can hardly believe that the legislature intended that, regardless of deaths, withdrawals or other changes thereafter occurring, the court should enter an order annulling a charter merely because a majority of voters filed a petition. Such a construction would often result in the dissolution of a charter in opposition to the

wishes of a majority of the voters. Therefore, it seems to us that in every case the court should give the parties a reasonable opportunity to investigate and take proof, and to the end that the judgment may represent the choice of a majority of the voters, he may permit the filing of amended pleadings showing any changes in the status up to the time of the rendition of the judgment. As the chancellor followed this course, and the demurrer to the amended answer admitted that the majority of the voters were opposed to the dissolution of the charter, the chancellor did not err in dismissing the petition.

Judgment affirmed.